

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV–16–660

| | |
|---|---|
| PATRICK MALLOY AND JOHN CALLAGHAN<br><br>APPELLANTS<br><br>V.<br><br>BRUCE SMITH AND JAN SMITH<br>APPELLEES | **Opinion Delivered:** May 10, 2017<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. 12CV-15-89]<br><br>HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

This case arises out of a default judgment in the Cleburne County Circuit Court. Patrick Malloy and John Callaghan raise the following three arguments in support of their position that the default judgment should be set aside: (1) Bruce and Jan Smith (the Smiths) did not comply with New York law regarding completion of service; (2) the Smiths' summonses do not strictly comply with Ark. R. Civ. P. 4(b); and (3) the default judgment against Malloy and Callaghan should be set aside for the reasons stated above and also due to "excusable neglect." Callaghan further argues that Malloy's defense of excusable neglect due to illness should inure to him under the common-defense doctrine. For the reasons set forth below, we find no error and affirm the circuit court.

## I. *Factual History*

On June 1, 2015, the Smiths filed a complaint against New York residents Patrick Malloy and John Callaghan in the Cleburne County Circuit Court. In their complaint, they alleged that Malloy and Callaghan only partially performed the contract they executed with

the Smiths and were therefore in breach. The Smiths asserted that in order to meet the costs of running a business owned by their son, Dane, they loaned Malloy and Callaghan around $300,000 between November 1, 2001, and June 27, 2013. According to the Smiths, Malloy and Callaghan promised to repay the Smiths, but they failed to do so after they had made a few payments.

On June 29 and July 1, 2015, the Smiths personally served Malloy and Callaghan at their places of business in New York. On July 13, 2015, the Smiths mailed a copy of the summonses to Malloy's and Callaghan's business addresses. On July 16, 2015, both proofs of personal service were filed in the Cleburne County Court. The June 29, 2015 proof of service showed that it was delivered by process server to Patrick Malloy's workplace, Malloy Enterprises, 14 Bay Street, Sag Harbor, NY 11963, and that Jenny Pagano accepted the summons. The proof of service of the summons dated July 1, 2015, showed that it was delivered by process server to John Callaghan's place of business at 50 Route 111, Suite 315, Smithtown, New York, 11787 and that it was left with Gloria Scholz. The parties agree that a summons was mailed to Malloy's and Callaghan's places of business on July 13, 2015; however, separate proofs of mailing the summonses were not filed within twenty days of mailing.

Neither Malloy nor Callaghan answered the Smiths' complaint, and the Smiths filed a motion for default judgment on August 17, 2015. In their motion, they asserted that both Malloy and Callaghan had been properly served, but neither party filed a responsive pleading within thirty days, as required. The Smiths requested a hearing on damages, and a notice of the hearing was mailed to Malloy's and Callaghan's places of business. Neither party

responded. On October 5, 2015, the damages hearing was conducted, and on October 19, the order awarding the Smiths $285,346.91 (with 10 percent postjudgment interest) was entered.

Malloy and Callaghan filed a joint answer on November 6, 2015, in which they denied they were in breach of contract. Malloy and Callaghan also asserted that they had not been properly served, and thus, the circuit court lacked personal jurisdiction over the parties.

On November 16, 2015, Malloy and Callaghan filed a motion to set aside the default judgment in which they argued that the default judgment against them was void due to insufficient service of process according to both New York and Arkansas law. Malloy and Callaghan also asserted that the court should set aside the default judgment based on "excusable neglect" due to Malloy's illness from June through October 2015, and that Malloy's defense inured to Callaghan under the common-defense doctrine. Malloy attached an affidavit from his physician, Dr. William B. Kerr, in which he stated that during May and June 2015, Malloy became increasingly lethargic and that his health deteriorated after a ruptured Achilles tendon on June 4. Dr. Kerr stated in his affidavit that Malloy was in and out of consciousness for an unspecified amount of time, that he was unable to speak clearly, that he could not tend to his daily needs, and that he required 24-hour nursing care. Dr. Kerr asserted that Malloy remained in grave medical condition and had been in the hospital off and on until around October 21, 2015, when he seemed to regain relatively normal functioning. Malloy submitted no other evidence or documentation of his illness.

The Smiths responded that service was proper according to both New York and Arkansas law and that Malloy's illness did not constitute excusable neglect.

On February 2, 2016, there was a hearing on the motion to set aside the default judgment. The court ruled from the bench that the Smiths met the requirements of Ark. R. Civ. P. 4 regarding service, and the circuit court rejected Malloy's argument regarding excusable neglect, finding that Malloy had failed to "attend to his business[.]" The circuit court took the issue of New York's requirements regarding proof of service under advisement. On April 29, 2016, the circuit court entered an order denying the motion to set aside the default judgment. In the order, the circuit court found that after having considered the testimony, documents filed in support, arguments of counsel, and "all other evidence and proof" the motion should be "denied in its entirety."

Malloy and Callaghan filed a timely notice of appeal.

II. *Standard of Review*

Arkansas Rule of Civil Procedure 55(c) (2016) governs default judgments, and subsection (c) sets forth the circumstances under which a court may set aside a default judgment:

> The court may, upon motion, set aside a default judgment previously entered for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; or (4) any other reason justifying relief from the operation of the judgment. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action; however, if the judgment is void, no other defense to the action need be shown.

Our standard of review for an order denying a motion to set aside a default judgment depends on the grounds upon which the appellant claims the default judgment should be

set aside. *Steward v. Kuettel*, 2014 Ark. 499, 450 S.W.3d 672. In cases in which the appellant

claims that the default judgment is void, our review is de novo, and we give no deference

to the circuit court's ruling. *Id.*

For their first and second points on appeal, Malloy and Callaghan assert that the

default judgment is void under Rule 55(c)(2) for lack of proper service, and thus our review

is de novo.  For their third point on appeal regarding excusable neglect, this court reviews

the circuit court's order denying the motion to set aside default for abuse of discretion. *See*

*Steward*, *supra*.

### III. *Issues on Appeal*

#### A. Whether the Smiths Properly Completed Service According to New York's Rules of Civil Procedure

Malloy and Callaghan argue that the Smiths did not properly perfect service

according to New York law, and thus the default judgment against them is void. We

disagree, and we affirm.[1]

According to Ark. R. Civ. P. 4(e)(2), service is authorized "in any manner prescribed

by the law of the place in which service is made." The Smiths served Malloy and Callaghan

in New York pursuant to section 308(2) of the New York Civil Practice Law and Rules,

which allows personal service to be made

> by delivering the summons within the state to a person of suitable age and discretion
> at the actual place of business, dwelling place or usual place of abode of the person

---

[1]The Smiths argue that Malloy and Callaghan failed to obtain a specific ruling on the issue of whether New York law requires proof of service to perfect service. We hold that the ruling obtained was in the nature of a "blanket" ruling and thus preserved for our review. *See Sloop v. Kiker*, 2016 Ark. App. 125, at 4, 484 S.W.3d 696, 699.

to be served and . . . by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service[.]

N.Y.C. P.L.R. § 308(2) (McKinney 2017).

New York requires that three steps must be completed before service is effected. First, the summons must be delivered to a person of suitable age at the party's actual place of business. Second, the summons must be mailed to the party's actual place of business. Third, the proof of service must be filed with the clerk of the court within twenty days of either the delivery or the mailing of service, whichever is later. *See Discover Bank v. Fortier*, 916 N.Y.S.2d 917 (N.Y. Sup. Ct. 2011).

Malloy and Callaghan admit that the Smiths personally delivered the summons to their places of business and that the Smiths mailed the summons to their business addresses as well. Malloy also agrees that the Smiths filed proofs of personal service with the clerk of the court within the specified time. The point of contention between the parties is whether N.Y.C. P.L.R. § 308(2) requires that proof of the *mailing* of the summons be filed within twenty days of either mailing or personal delivery, whichever had been effected later. Malloy and Callaghan argue that the Smiths failed to file a valid proof of service, because the proofs of service contained proof only that the server had personally delivered the summons to their places of business, and that the proofs did not show proof of mailing. We disagree.

Rule 308(2) specifically sets forth that "proof of service shall identify such persons of suitable age and discretion and state the date, time and place of service[.]" Rule 306, entitled "Proof of Service," defines what constitutes proof of service:

> (a) Generally. Proof of service shall specify the papers served, the person who was served and the date, time, address, or, in the event there is no address, place and manner of service, and set forth facts showing that the service was made by an authorized person and in an authorized manner.

> (b) Personal service. Whenever service is made pursuant to this article by delivery of the summons to an individual, proof of service shall also include, in addition to any other requirement, a description of the person to whom it was so delivered, including, but not limited to, sex, color of skin, hair color, approximate age, approximate weight and height, and other identifying features.

N.Y.C. P.L.R. § 306 (a)—(b).

The two summonses in the record contain the following information. The first summons shows that it was issued to Patrick Malloy, that it was personally served by process server at his place of business on June 29, 2015, and that it was left with Jenny Pagano. The second summons sets forth that it was personally delivered to John Callaghan at his place of business on July 1, 2015, and that Gloria Scholz accepted it. Both summonses contain a physical description of the person who received the summons.

Malloy and Callaghan do not dispute that the summonses were mailed on July 13, 2015, and that the proofs of service described above were filed on July 16, 2015, and were within the twenty-day time limit. Appellants argue that because the Smiths did not ask leave of the court to file the proofs of mailing late, service was not completed in a timely fashion and the default judgment was void; however, we cannot discern any language dictating that proof of the *mailing* of the summons must be timely filed in either section 308(2) or section 306.

SLIP OPINION

Malloy cites several New York cases in support of his argument. None of the cases are analogous to the case at bar. *See Alexander Smith Carpet v. Walter Arnold, Inc.*, 462 N.Y.S.2d 206 (N.Y. App. Div. 1983) (in which the New York Supreme Court held that service was defective because the Massapequa address that the summons was delivered to was not the actual place of the defendant's business or residence); *Bossuk v. Steinberg*, 447 N.E.2d 56, 58 (N.Y. 1983) ("[W]e find equally without merit defendant's contention that proof of the mailing of a copy of the summons, as further required by the statute, was lacking because the Sheriff's employee who actually did so was not produced. The proof of the Sheriff's regular course of business in this regard sufficed."); *Takeuchi v. Silberman*, 839 N.Y.S.2d 71 (N.Y. App. Div. 2007) (Jurisdiction was demonstrated by plaintiffs' showing delivery to person of suitable age and discretion at, and mailing to, place that defendant acknowledged was his place of business.); *Garrison Fuel Oil of Long Island, Inc. v. Grippo*, 486 N.Y.S.2d 136 (Nassau Cty. Ct. 1985) (The court held that it was impossible to ascertain whether service pursuant to CPLR 308(2) was properly accomplished because the affidavit of service did not list the address to which the copy of the subpoena was mailed.); *N.Y. State Higher Educ. Servs. Corp. v. Palmeri*, 563 N.Y.S.2d 358, 359 (N.Y. App. 1990) (Service was not proper because the mailing was made twenty-six days after the service at his residence rather than the required twenty days.).

While section 308(2) does clearly require that the mailing be done within twenty days, it does not establish that the proof of the mailing be filed in order to complete service. Proof of service must be filed but not proof of the mailing. We hold that perfection of service was effected under New York law, and we affirm.



B. Arkansas Rule of Civil Procedure 4

Malloy and Callaghan contend on appeal that the Smiths did not comply with Ark. R. Civ. P. 4(b) because the space on the official form of summons for the address of the party being served was left blank, and thus, the default judgment is void for lack of service. We disagree.

Statutory service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact in order to give a court jurisdiction over a defendant. *See Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 120 S.W.3d 525 (2003). This court has held that the same reasoning applies to service requirements imposed by court rules. *Trusclair v. McGowan Working Partners*, 2009 Ark. 203, at 3–4, 306 S.W.3d 428, 430. The technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly and compliance with those requirements must be exact. *Id.* The purpose of the summons is to apprise a defendant that a suit is pending against him and afford him an opportunity to be heard. *Shotzman v. Berumen*, 363 Ark. 215, 227, 213 S.W.3d 13, 19 (2005).

Rule 4(b) sets forth that the summons must contain

the names of the parties; be directed to the defendant; state the name and address of the plaintiff's attorney, if any, otherwise the address of the plaintiff; and the time within which these rules require the defendant to appear, file a pleading, and defend and shall notify him that in case of his failure to do so, judgment by default may be entered against him for the relief demanded in the complaint.

Malloy and Callaghan argue that because the official form of summons required by our supreme court contains a blank space for the defendant's address, the address must be filled in to meet the Rule 4(b) requirement that the summons "be directed to the

defendant." Malloy and Callaghan cite *Shotzman*, in support of their argument. In *Shotzman*, the appellants argued that they complied with the requirement that the summons be "directed to" the defendant. They asserted that there is no requirement that a defendant's name be set forth after the language on the summons form: "THE STATE OF ARKANSAS TO DEFENDANT(S)" and contended that Rule 4 requires only that the summons be "directed to" the defendant. Because "SEMMC" was listed under the heading "Defendant's address," they argued that they had sufficiently complied with the rule. Our supreme court held,

> However, this argument is contradicted by this court's adoption of the Official Form of Summons on May 24, 2001, wherein the court provided that the form was "adopted . . . for use in all cases in which personal service is to be had pursuant to Rule 4(c), (d), and (e) of the Arkansas Rules of Civil Procedure." The language of the official form includes the phrase "THE STATE OF ARKANSAS TO DEFENDANT: _____." We are unwilling to conclude that this phrase is nothing more than surplus verbiage, or that it is unnecessary for a plaintiff to fill in the blank to identify the defendant.

*Id.* at 227–28, 213 S.W.3d at 19–20.

*Shotzman* is distinguishable from the instant case. First, the crux of *Shotzman* is that the summons did not include the correct name of the defendant. Our supreme court held that "[b]ecause Sisters of Mercy and SEMMC are entirely separate corporate entities, the Shotzmans' 'misnomer' is fatal because it was 'material and substantial [enough] to indicate a different entity or to produce doubts as to the corporation intended to be sued.'" *Id.* at 225, 213 S.W.3d at 18 (quoting *Builder One Carpet One v. Wilkins*, 83 Ark. App. 252, 257, 128 S.W.3d 828, 831 (2003)). Malloy and Callaghan do not argue that there was a misnomer or omission on the form of the summons that would have created confusion as to the party being sued. They argue simply that the form had a space for the address of the

defendant and that information must be filled in on the form to satisfy the requirement that the summons be directed to the defendant.

It is important to note that the official form of summons sets forth that the form complies with Rule 4(b) and "does not modify of amend any part of that rule." With that in mind, we note that Rule 4 does not specifically require that the defendant's address be stated on the summons. Arkansas Rule of Civil Procedure 4 requires only that the summons be directed to the defendant, which was done by filling in the correct names of the defendants. Furthermore, the purpose of a summons, as stated above, is to apprise a defendant that a suit is pending against him and afford him an opportunity to be heard. No confusion as to the identity of the parties in this case was alleged, as was contended in *Shotzman*. We hold that *Shotzman* is inapposite to the present case.

Malloy and Callaghan also cite *Earls v. Harvest Credit Management*, 2015 Ark. 175, 460 S.W.3d 795, in support of their argument that service was void; however, *Earls* is distinguishable from the present case as well. Our supreme court held in *Earls* that because the response time was incorrectly stated as thirty days rather than sixty days, the summons was void:

> [T]he language of Rule 4(b) requiring that the summons be directed to "the defendant," or in this case, the Earlses, must be read in conjunction with Rule 12(a), which provides for varying response times for in-state, out-of-state, and incarcerated defendants. Given that Rule 4 and Rule 12 govern summonses and the response times therein, we cannot ignore our case law that states that a summons must comply exactly and not substantially with the requirements of Rule 4(b). Thus, we conclude that the response times for each category of defendant—in-state, out-of-state, and incarcerated defendants—must be correct and exact.

*Id*. at 6–7, 460 S.W.3d at 799 (citations omitted). In *Earls*, there was an obvious error on the face of the summons misstating the response time for the defendants. Here, there is no

error or omission on the face of the summons that violates or fails to fulfill the requirements

of Rule 4.

This case is analogous to *Talley v. Asset Acceptance, LLC*, 2011 Ark. App. 757, in

which the appellant argued the summons was fatally defective because the court's zip code

was incorrectly stated on the form. In *Talley* our court held,

> Nothing contained in subsection (b) requires the court address to appear in
> the summons. In addition, while it is true that the Reporter's Notes to Rule 4 contain
> an "Official Form of Summons," which provides a space for "Address of Clerk's
> Office: _____," we have concluded that, in determining whether there has
> been exact compliance with the service requirements, the language actually set forth
> in Rule 4 must take precedence over the "Official Form." This is particularly true
> in light of the fact that the Reporter's Notes also provide, "[t]he form ... may be
> modified as needed in special circumstances." The Notes go on to explain, "The
> adoption of this form is in compliance with Rule 4(b) and does not modify or amend
> any part of that rule."

*Id*. at 4.

On this point, we affirm.

### C. Excusable Neglect

Malloy and Callaghan argue that the circuit court erred in finding that Malloy did

not prove excusable neglect due to illness and that they have a meritorious defense to the

Smiths' action; thus, the default judgment should be set aside. Their argument is not well-

taken, and on this point we affirm.

As we stated earlier, Rule 55(c) provides that the court may set aside a default

judgment when it finds that the defaulting party has proved excusable neglect and has

demonstrated a meritorious defense to the action. *See Tyrone v. Dennis*, 73 Ark. App. 209,

39 S.W.3d 800 (2001).

Malloy asserts that he was ill from June to October 2015, and his personal physician supports Malloy's assertion in an affidavit. Dr. Kerr stated that on June 4, 2015, Malloy collapsed after he had ruptured his Achilles tendon, that following the rupture, Malloy had been in and out of consciousness, that he was eventually diagnosed with deep-vein thrombosis, and that he spent from June to October in "grave medical condition" requiring constant nursing-home care. Dr. Kerr asserted that Malloy was unable to attend to his affairs during this time.

The circuit court rejected Malloy's explanation, stating from the bench that "there's gaps that I'm not satisfied that . . . Mr. Malloy was in fact incapacitated that entire period of time." In other words, the circuit court did not find Malloy's testimony or his physician's affidavit credible. The circuit court found that Malloy had not proved excusable neglect and that Malloy had failed to attend to his business. Our supreme court and this court have repeatedly held that failure to attend to business does not constitute excusable neglect. *See Maple Leaf Canvas, Inc. v. Rogers*, 311 Ark. 171, 842 S.W.2d 22 (1992); *Israel v. Oskey*, 92 Ark. App. 192, 202, 212 S.W.3d 45, 51 (2005). We hold that the circuit court did not abuse its discretion in finding that Malloy did not meet his burden of proof regarding excusable neglect.

Because we affirm the circuit court's decision that Malloy did not prove excusable neglect, there is no need to reach the second prong of the analysis regarding whether Malloy and Callaghan had a meritorious defense to the complaint. *See* Ark. R. Civ. P. 55(c). Similarly, we need not reach the merits of whether Malloy's defense inures to Callaghan, or any preservation issues regarding that argument.

Affirmed.

WHITEAKER, J., agrees.

GRUBER, C.J., concurs.

**RITA W. GRUBER, Chief Judge, concurring.** The Smiths stated in their brief supporting their motion for default judgment that they mailed first-class letters to each appellant within twenty days after service. Under N.Y. CPLR § 308(2), "delivery and mailing [of the summons] are to be effected within twenty days of each other; *proof of such service shall be filed* with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later . . . ." (Emphasis added.) Appellants assert that—because the alleged mailings were on July 13, 2015, and the motion for default judgment was not filed until more than a month later—the Smiths failed to file with the clerk of the court valid proofs of service within the section's twenty-day time limit.

In *Discover Bank v. Eschwege*, 897 N.Y.S.2d 333 (N.Y. App. Div. 2010), the plaintiff did not obtain judicial permission before filing proof of mailing more than twenty days after service; the Appellate Division, Fourth Department, vacated the default judgment against the defendant. The *Eschwege* court noted that failure to file proof of service within the time specified in CPLR § 308 is not a jurisdictional defect but a procedural irregularity that may be cured by an order permitting the late filing of proof of service nunc pro tunc; a court may exercise its discretion and sua sponte cure the irregularity. 897 N.Y.S.2d, at 334.

In the case we decide today, I agree that section 308(2) does not establish that *proof of mailing* shall be timely filed. Because it is not our place to interpret New York law, and

because section 308(2) gives no guidance as to how the plaintiff shall notify the court that the mailing requirements of the section have been followed, I agree that service was effected under New York law.

*Wright, Lindsey & Jennings LLP*, by: *Charles T. Coleman*, *Michael A. Thompson*, and *Jacob P. Fair*, for appellants.

*Bowen Law Firm, PLLC*, by: *Martin W. Bowen*, for appellees.