Cite as 2019 Ark. App. 545

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-18-509

| | |
|---|---|
| CARROLL "DON" JOHNSON | **Opinion Delivered:** November 20, 2019 |
| APPELLANT | APPEAL FROM THE POPE COUNTY CIRCUIT COURT [NO. 58CV-16-538] |
| V. | |
| SCHUMACHER GROUP OF ARKANSAS, INC.; POPE EMERGENCY GROUP, LLC; AND RUSSELLVILLE HOLDINGS, LLC, D/B/A ST. MARY'S REGIONAL MEDICAL CENTER | HONORABLE DENNIS CHARLES SUTTERFIELD, JUDGE |
| | AFFIRMED |
| APPELLEES | |

**ROBERT J. GLADWIN, Judge**

The appellant, Dr. Carroll "Don" Johnson, filed a complaint in the Pope County Circuit Court alleging that appellee Pope Emergency Group (Pope) and its parent company, Schumacher Group of Arkansas (Schumacher), were liable for breach of contract and wrongful termination. Dr. Johnson also sued Russellville Holdings, LLC, which owns and does business as St. Mary's Regional Medical Center (St. Mary's), for tortious interference with the professional-services contract that Dr. Johnson executed with Pope. Pope also filed a counterclaim for breach of contract alleging that Dr. Johnson failed to return a $30,000 signing bonus as required by the terms of the agreement.

Dr. Johnson nonsuited all his claims after each of the appellees filed motions for summary judgment. Pope elected to continue with its breach-of-contract claim, and in a companion case that we also decide today, *see Johnson v. Pope Emergency Group*, 2019 Ark. App. 544, 589 S.W.3d 462, we affirm the circuit court's order granting summary judgment to Pope.

Dr. Johnson refiled his claims against Pope, Schumacher, and St. Mary's in a separate case, Pope County Circuit Court case No. 58CV-16-538. The circuit court dismissed those claims with prejudice, however, after ruling that the summonses that Dr. Johnson issued with his refiled complaint were fatally defective. Dr. Johnson now challenges that order in this appeal. We affirm.

I. *Facts and Procedural History*

The facts underlying Dr. Johnson's breach-of-contract, wrongful-termination, and tortious-interference claims are set forth in detail in our opinion in *Johnson v. Pope Emergency Group*, *supra*; consequently, we will not repeat them here. Rather, we resume the story from the point at which Dr. Johnson refiled his claims.

Dr. Johnson refiled his complaint against Pope, Schumacher, and St. Mary's on November 21, 2016. All the defendants were served with summonses that provided, in material part, if each of them "failed to respond within the applicable time period, judgment by default *will* be entered against [them] for the relief demanded in the complaint." (Emphasis added.) Several months later, Pope, Schumacher, and St. Mary's filed motions to dismiss the complaint because the summonses did not strictly comply with Ark. R. Civ. P. 4(b), which expressly requires summonses to state that judgments by default *may*—not

2

*will*—be entered in the event defendants fail to timely respond. They argued that dismissal was mandatory, moreover, because Dr. Johnson failed to seek an extension or serve a corrected summons within 120 days after filing the complaint, as required by Ark. R. Civ. P. 4(i).

While the motions to dismiss were pending, Pope and Schumacher filed a motion for protective order pursuant to Ark. R. Civ. P. 26. The motion alleged that Dr. Johnson had refiled claims that "he voluntarily dismissed in a previous action after the parties had completed discovery, including a deposition of a corporate representative for the Schumacher-Pope defendants." The motion further alleged that Dr. Johnson had "served another [Ark. R. Civ. P] 30(b)(6) deposition notice seeking to depose [the corporate representative] a second time." Therefore, Pope and Schumacher requested that the court issue a protective order "quashing [the] repetitive deposition notice" and "forbidding [Dr. Johnson] from engaging in . . . duplicative discovery." Pope and Schumacher also requested that the circuit court "award them their expenses, including attorney's fees, incurred in relation to the motion for protective order[.]"

The circuit court entered an order dismissing Dr. Johnson's refiled claims on February 28, 2018. The court agreed that the summonses failed to strictly comply with Rule 4(b). The circuit court also rejected Dr. Johnson's argument that Pope and Schumacher waived their defense of insufficient process by filing a motion for protective order and seeking attorney's fees, which Dr. Johnson claimed was a request for affirmative relief that ordinarily waives jurisdictional defects. The circuit court dismissed the claims *with prejudice*,

3

moreover, because Dr. Johnson "voluntarily dismissed these same claims against Schumacher, Pope, and St. Mary's in a previous action filed in this [c]ourt."

Dr. Johnson now appeals the circuit court's order, arguing that the circuit court erred in two respects. First, he asserts that this court has previously refused to require strict compliance with Ark. R. Civ. P. 4(b) when an alternative interpretation would avoid "absurd consequences" and give effect to the rule's purpose. In that vein, Dr. Johnson argues that the defect in the summonses issued in this case, stating that a default judgment *will*—rather than *may*—be entered in the event the defendants fail to respond, was a mere grammatical error that did not otherwise prevent the appellants from being apprised of the pendency of the lawsuit or deny them the opportunity to be heard. Second, Dr. Johnson insists that Pope and Schumacher waived their challenge to the sufficiency of the summonses when they sought attorney's fees in connection with their motion for protective order. As he did below, Dr. Johnson asserts that the prayer for attorney's fees was the sort of request for affirmative relief that this court has previously held waives sufficiency of process and other challenges to personal jurisdiction.

## II. *Standard of Review*

"In cases where the appellant claims that the [circuit] court erred in granting a motion to dismiss, appellate courts review the [circuit] court's ruling using a de novo standard of review." *Holliman v. Johnson*, 2012 Ark. App. 354, at 4, 417 S.W.3d 222, 224. The de novo standard is also applied when the issue presented involves, as it does here, the correct interpretation of an Arkansas court rule. *Id.*

4

III. *Discussion*

A. Defective Summonses

Dr. Johnson first argues that the circuit court erred by ruling that the summonses were fatally defective under Ark. R. Civ. P. 4(b). According to Dr. Johnson, the defect that incorrectly warned the appellants that judgment by default *will*—as opposed to *may*—be entered against them was not fatal. It was a mere grammatical error, he says, that did not otherwise prevent the appellants from being notified of the pendency of the lawsuit or deny them the opportunity to be heard. In response, the appellees argue that this court has required strict compliance with the requirements of Rule 4(b), and the rule specifically requires that summonses notify defendants that default judgments *may*—not *will*—be entered against them. We believe that the supreme court cases requiring strict compliance with Rule 4(b) warrant affirming the circuit court's order.

"The purpose of [a] summons is to apprise a defendant that a suit is pending against him and afford him an opportunity to be heard." *Malloy v. Smith*, 2017 Ark. App. 288, at 9, 522 S.W.3d 819, 825. Therefore, "[s]tatutory service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact in order to give a court jurisdiction over a defendant." *Id.* "This court has held that the same reasoning applies to service requirements imposed by court rules." *Id.* "The technical requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly and compliance with those requirements must be exact." *Id.* Indeed, "[t]he bright-line standard of strict compliance permits certainty in the law; whereas, a substantial-compliance standard would lead to an ad hoc analysis in each case in order to determine whether the due-process

requirements of the Arkansas and [United States] Constitutions have been met." *Earls v. Harvest Credit Mgmt. VI-B, LLC*, 2015 Ark. 175, at 6, 460 S.W.3d 795, 798 (internal citations omitted).

Rule 4(b) of the Arkansas Rules of Civil Procedure governs the form of summonses and provides as follows:

> The summons shall be styled in the name of the court and issued under its seal, dated and signed by the clerk or a deputy clerk, and directed from the State of Arkansas to the defendant to be served. It shall contain, in its caption, the names of the plaintiff and defendant or, if there are multiple parties, the names of the plaintiff and the defendant listed first in the complaint; the address of the defendant to be served, if known; the name and address of the plaintiff's attorney, if any, otherwise the address of the plaintiff; the time within which these rules require that the defendant to be served must appear, file a responsive pleading or motion, and defend; and notice that the defendant's failure to appear, respond and defend within the time allowed *may* result in entry of judgment by default against the defendant for the relief demanded in the complaint.

(Emphasis added.) This language "sets forth the items that must be included in a summons, the lack of which render it void under the [strict–]compliance standard." *Talley v. Asset Acceptance, LLC*, 2011 Ark. App. 757, at 4. The rule expressly provides that a defendant shall be notified that a judgment *may*—not *will*—be entered against him if the defendant fails to appear.

The error is not "merely grammatical," as Dr. Johnson contends. We have long recognized the substantive difference between the permissive term "may" and the mandatory term "shall"—a synonym of "will." *See Schueller v. Schueller*, 86 Ark. App. 347, 353, 185 S.W.3d 107, 111 (2004). Additionally, as Pope and Schumacher assert in their brief, Rule 4(b)'s use of the word "may" is substantively correct because Ark. R. Civ. P. 55(a) provides a court "may" enter a default judgment when a party fails to "plead or

otherwise defend" in a lawsuit. Therefore, the summonses that Dr. Johnson issued in his refiled lawsuit, which warned that a default judgment *will* be entered if the appellees failed to respond, did not strictly comply with the requirements of Rule 4(b).

Further, while it is tempting to view dismissal of the lawsuit for this seemingly harmless defect as the kind of "absurd consequence" that the supreme court wanted to avoid in both *Nucor Corp. v. Kilman*, 358 Ark. 107, 122–23, 186 S.W.3d 720, 729 (2004), and *Hall v. State Farm Bank*, 2015 Ark. App. 287, at 5, 462 S.W.3d 701, 704, those cases are distinguishable from the case at hand. Unlike here, the summonses in those cases did not contain an erroneous statement of any of the express provisions in Rule 4(b).

In *Nucor*, for example, the alleged defect in the summons was a matter of interpretation. The appellant, Nucor Corporation, argued that a default judgment should be set aside because the summons in that case, which was directed to "Nucor Corporation, Et Al," did not list the other defendants by name. According to Nucor, this defect was fatal because Rule 4(b) required the summons to "contain the names of the parties." The issue before the supreme court, therefore, was whether Rule 4(b) required "a listing of . . . every defendant on every summons, no matter how many . . . defendants are parties to the case," *see Nucor Corp.*, 358 Ark. at 123–24, 186 S.W.3d at 729, or whether the rule simply required proper identification of the defendant to whom the summons was directed. The supreme court chose the latter interpretation, observing that it was most in line with the purpose of Rule 4(b)—to ensure that a summons notifies a defendant of the pendency of the lawsuit and affords him or her the opportunity to be heard. Therefore, the summons directed to

Nucor, which properly identified it as a defendant in the case, was not fatally defective because it failed to name the other defendants. *Id.*, 358 Ark. at 124, 186 S.W.3d at 729.

Similarly, in *Hall*, appellant John Hall argued that the summons that was directed to both Hall and his ex-wife was defective. According to Hall, Rule 4(b) did not allow a single summons to be directed to multiple defendants, providing only that a summons shall be "directed to the defendant" in the singular. We rejected that argument and held that the summons was not defective because "there is no express prohibition in Rule 4(b) or the included form to listing more than one defendant, despite [Hall's] assertion to the contrary." *Hall*, 2015 Ark. App. 287, at 4, 462 S.W.3d at 704. We also observed that Hall's proposed interpretation of the rule would lead to "absurd consequences," especially when Hall was apprised of the pendency of the lawsuit and was granted an opportunity to be heard in accordance with the language of Rule 4(b). *See id.* at 5, 462 S.W.3d at 704.

The defect in this case is not a matter of interpretation. As we discuss above, the summonses issued to the appellees erroneously state an express requirement of Rule 4(b)—that a default judgment *may*—not *will*—be entered if the defendant fails to timely answer the complaint.

The supreme court has found such defects to be fatal, moreover, even when they appear harmless to the defendant. The supreme court's decision in *Earls* is particularly illustrative. There, the appellants, Linda and Tony Earls, argued that the circuit court erred by entering a default judgment against them because the summons misstated the response time for incarcerated defendants. The supreme court found the defect to be fatal even though the couple was not incarcerated. In doing so, the court reiterated that "the technical

requirements of a summons set out in Ark. R. Civ. P. 4(b) must be construed strictly and compliance with those requirements must be exact" and that "the bright-line standard of strict compliance permits certainty in the law[.]" *Earls*, 2015 Ark. 175, at 5–6, 460 S.W.3d at 798 (internal citation omitted). The court also wrote the following:

> [T]he language of Rule 4(b) requiring that the summons be directed to "the defendant," or in this case, the Earleses, must be read in conjunction with Rule 12(a), which provides for varying response times for in-state, out-of-state, and incarcerated defendants. Given that Rule 4 and Rule 12 govern summonses and the response times therein, we cannot ignore our case law that states that a summons must comply exactly and not substantially with the requirements of Rule 4(b). Thus, we conclude that the response times for each category of defendant—in-state, out-of-state, and incarcerated defendants—must be correct and exact.

*Id.* at 6–7, 460 S.W.3d at 799.

Likewise, in *Trusclair v. McGowan Working Partners*, 2009 Ark. 203, at 2–6, 306 S.W.3d 428, 430–31, the supreme court held that the summons issued to McGowan was fatally defective because it erroneously restricted the response time allowed for McGowan—an out-of-state defendant. Rather than the thirty-day response time set forth in Ark. R. Civ. P. 12(a)—the summons provided that McGowan must respond within the stricter twenty-day response time allotted to in-state defendants.[1] The supreme court rejected Trusclair's argument that McGowan—who nonetheless responded within twenty days—was not prejudiced by the error and held that the defect was fatal because it failed to strictly comply with the technical requirements of the summons set forth in Rule 4(b). *Id.* at 5, 306 S.W.3d at 430–31.

---

[1]Rule 12(a)(1) was amended in 2011 to require that both resident and nonresident defendants file a response within thirty days after service of the summons and complaint.

9

Accordingly, however inconsequential it may appear, the defect in this case is fatal to the summonses under the strict-compliance standard articulated by the supreme court. The circuit court's order dismissing the case, therefore, is affirmed.

## B. Waiver

Dr. Johnson next argues that the circuit court erred when it ruled that Schumacher and Pope did not waive their jurisdictional arguments regarding the defective summonses when they requested attorney's fees in connection with their motion for a protective order. According to Dr. Johnson, the fee request was the sort of affirmative relief that this court has held waives deficiencies in service of process. Pope and Schumacher reply that precedent from this court and the supreme court establish that "requesting attorneys' fees in the context of defending an action does not constitute a request for relief that waives service defenses." Because we agree that the request for attorney's fees was not a request for affirmative relief that waived Pope and Schumacher's challenges to the court's personal jurisdiction, we affirm.

As we state above, service of valid process is necessary to give a court jurisdiction over a defendant. *See Goodson v. Bennett*, 2018 Ark. App. 444, at 7, 562 S.W.3d 847, 855. "The defense of personal jurisdiction, however, may be waived by the appearance of the defendant without raising an objection." *Id*. "This court has long recognized that any action on the part of a defendant, except to object to jurisdiction, which recognizes the case in court, will amount to an appearance." *Id*. (internal quotation marks omitted). "In deciding whether a defendant has waived his rights and entered an appearance, a determining factor is whether the defendant seeks affirmative relief." *Id*. (internal quotation marks omitted).

To be clear, Pope and Schumacher objected to the defect in their summonses. Defendants can preserve the defense of insufficiency of process by raising it in their responsive pleadings and later moving to dismiss the case, *see Wallace v. Hale*, 341 Ark. 898, 900, 20 S.W.3d 392, 394 (2000), and Pope and Schumacher filed an answer and amended answer that specifically reserved their objections alleging insufficiency of process. They also filed motions to dismiss on that basis. But the issue here is whether the request for attorney's fees that they later made in connection with their motion for protective order was a request for affirmative relief that waived these objections. We hold that it was not.

A request for affirmative relief that waives a challenge to sufficiency of process is something "more than a defensive action" that is inconsistent with a defendant's assertion that the circuit court lacked personal jurisdiction over him. *See Farm Bureau Mut. Ins. Co. v. Campbell*, 315 Ark. 136, 141, 865 S.W.2d 643, 645 (1993). The most obvious examples are counterclaims, cross-claims, and third-party claims in which a defendant "invokes the jurisdiction of the court" and thereby "submits to it." *Ark. Game and Fish Comm'n v. Lindsey*, 292 Ark. 314, 317, 319, 730 S.W.2d 474, 476, 478 (1987). We have also suggested that other requests demonstrating acquiescence to the circuit court's jurisdiction, such as a motion for a stay of a final divorce hearing, *see Goodson*, 2018 Ark. App. 444, at 8, 562 S.W.3d at 855, or a bondsman's motion for additional time to locate a fugitive for a bond forfeiture hearing, *see Affordable Bail Bonds, Inc. v. State*, 2015 Ark. App. 44, at 5, seek the sort of affirmative relief that waives personal jurisdiction.

Our cases also make it clear, however, that motions for a protective order and requests for attorney's fees do not waive objections to personal jurisdiction. In *Bituminous,*

11

*Inc. v. Uerling*, 270 Ark. 904, 907, 607 S.W.2d 331, 333 (1980), the supreme court held that the defendants' motion for protective order and attorney's fees did not constitute a waiver because "the relief sought was in no way inconsistent with [their] claim of improper venue." Likewise, in *Dobbs v. Discover Bank*, 2012 Ark. App. 678, at 10, 425 S.W.3d 50, 56, we held that a defendant did not waive personal jurisdiction by including a request for attorney's fees in his answer, observing that "[a]n answer with boilerplate language seeking attorneys' fees and 'all other relief to which [the party] may be entitled' is not a request for affirmative relief."

In the case at bar, Pope and Schumacher appropriately objected to the defective summonses by reserving a challenge in their answer and later filing a motion to dismiss. According to *Bituminous* and *Dobbs*, their request for attorney's fees did not waive their challenge to the circuit court's jurisdiction. The circuit court's order dismissing the case, therefore, is affirmed.

IV. *Conclusion*

The summonses issued in this case, which warned that a default judgment *will*—rather than *may*—be entered if the defendants failed to appear, were fatally defective because they failed to comply with an express requirement in Rule 4(b). Pope and Schumacher did not waive their challenges to the defective summonses, moreover, by requesting attorney's fees in connection with their motion for protective order. The circuit court, therefore, did not err by dismissing Dr. Johnson's refiled claims.

Affirmed.

ABRAMSON and KLAPPENBACH, JJ., agree.

12

*Sutter & Gillham, P.L.L.C.*, by: *Luther Oneal Sutter*; and *Baker & Schulze*, by: *J.G. "Gerry" Schulze*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Regina A. Young* and *Gary D. Marts, Jr.*, for separate appellees Schumacher Group of Arkansas, Inc., and Pope Emergency Group, LLC.

*Munson, Rowlett, Moore & Boone, P.A.*, by: *Beverly A. Rowlett*, *Tim Boone*, and *Sarah E. Greenwood*, for separate appellee Russellville Holdings, LLC, d/b/a St. Mary's Regional Medical Center.